UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-CIV-20072-COHN/SELTZER

WIT WALCHI INNOVATION TECHNOLOGIES,
GMBH, a Swiss limited liability company, and
WIT AMERICAS, LLC, a Florida limited liability company,

    Plaintiffs,

v.

JEROME R. WESTRICK,

    Defendant.
_____/

## STIPULATED PERMANENT INJUNCTION ORDER[1]

**THIS CAUSE came** before the Court on January 19, 2012 for an evidentiary hearing on Plaintiffs WIT Wälchli Innovation Technologies, Gmbh and WIT Americas, LLC's Motion for Preliminary Injunction [DE 4]. Plaintiffs' counsel tendered to the Court a Settlement Stipulation [DE 19] (the "Stipulation") between Plaintiffs and Defendant Jerome R. Westrick, an individual, in which the parties have agreed to issuance of a permanent injunction and other provisions. The Court has carefully considered the Settlement Stipulation, the Court file, and is otherwise fully advised in the premises.

### I. FACTUAL FINDINGS

Based on the foregoing, the Court finds as follows:

On January 6, 2012, the Court entered a Temporary Restraining Order and Order to Show Cause Why Writ of Replevin Should Not Issue [DE 9] (the "TRO")

---

[1] Plaintiffs' counsel submitted a proposed order, copied at the time of submission to Defendant's counsel, which forms the basis of this Order being entered by the Court.

against Defendant Jerome R. Westrick, an employee, minority shareholder and computer programmer, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Prior to so doing, the Court evaluated Plaintiffs' Emergency Motion for Temporary Restraining Order and for Temporary Injunction with Prohibitory and Mandatory Provisions, and exhibits thereto [DE 4] (the "Motion").

The Court also reviewed Plaintiffs' Verified Complaint, alleging four claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, misappropriation of trade secrets under Florida statutory law, trespass to chattel, conversion, prejudgment writ of replevin, and a writ of ne exeat. The CFAA claims include unauthorized access to information in a protected computer (§1030(a)(2)) (Count I, ¶¶34-36); unauthorized access to a protected computer with intent to defraud and by dishonest methods and for improper purposes, by seeking to obtain a payment of $300,000 in return for renewed access to the protected computer (§1030(a)(4)) (Count II, ¶¶ 39-41); causing transmission of a program, information, codes or commands that have intentionally caused damage without authorization to Plaintiffs' protected computer (§1030(a)(5)) (Count III, ¶¶ 44-46); and with intent to extort from Plaintiffs $300,000, transmitted by international telephone communication a threat to cause and continue to cause damage to Plaintiffs' protected computer system (§1030(a)(7)) (Count IV, ¶ 49).

Plaintiffs, two related companies that sell enterprise content management software to other businesses, allege that Defendant "hacked" into Plaintiffs' computer system, changed codes and passwords to lock Plaintiffs' employees and its prospective customers from use of the software, by using a Sony Vaio VPCF 115FM/B/Core 7 laptop computer belonging to Plaintiffs that contains the source codes and

programming for Plaintiffs' proprietary business management software product. See Affidavit of Thomas Wälchli, ¶ 7 [DE 5]. The affidavit further alleged that Defendant had telephoned Urs Wälchli, a member of the Plaintiff WIT Switzerland's Board of Directors, and sought payment of $300,000 as the price to reveal the changed access codes and passwords to Plaintiffs. *Id.* ¶ 7.  The software, including its processes and source code, is owned by Plaintiffs and is "a highly secret, proprietary system, process, program and framework that is highly confidential and extremely valuable." *Id.* ¶ 4.  The software "embodies intellectual processes and know-how that is the product of many thousands of hours of high-level development…and derives its economic value, both actual and potential, from not being generally known to, and not being readily ascertainable…by other persons who can obtain economic value from its disclosure." *Id.*  If the source code of the software is misappropriated, disclosed or otherwise released, it would "destroy" the market interest in the product. *Id.*  Plaintiffs allege that Defendant knowingly changed the source code contained in the protected computer with the intent to deprive Plaintiffs of the benefits from their software. *Id.* ¶ 8.

Upon issuance of the TRO against Defendant, Plaintiffs posted the court-ordered $5,000 injunction bond [DE 13].  The express terms of the TRO required Defendant to return the protected laptop to Plaintiffs, which was done; and Defendant was required to serve and file a written response by 12 noon on Tuesday, January 17, 2012.  No response was filed or served by Defendant, who instead entered into settlement negotiations with Plaintiffs through his counsel, and on January 19, 2012, at the evidentiary hearing set by the Court, the Plaintiffs' counsel proffered the Settlement Stipulation, signed by Defendant before a notary public, in which the parties stipulate

3

that all legal elements and requisite factual basis for the issuance of a permanent injunction have been met, and that the parties agree to entry by the Court of a permanent injunction.  See Stipulation at p.1-2 [DE 19].

## II.  LEGAL CONCLUSIONS

### A.  Permanent Injunction Standard

In order to obtain a permanent injunction, under the principles of equity, Plaintiffs are required to establish the following four factors: (1) irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Accordingly, the standard for a permanent injunction is almost the same as for a preliminary injunction, except that the movant must show actual success on the merits instead of a likelihood of success. *Siegal v. Lepore*, 234 F.3d 1163, 1213 (11th Cir.2000). The decision to grant permanent injunctive relief is an act of equitable discretion by the district court. *eBay,* 547 U.S. at 391.

The parties have agreed that the factual and legal elements have been met for issuance of a permanent injunction, and the Court, exercising its independent judgment, finds that entry of a permanent injunction against Defendant is warranted.

### B.  CFAA Claim

### 1.  Success on the merits

The alleged violations in this case are essentially that Defendant exceeded his authority, and intentionally accessed Plaintiffs' protected computer, with the intent to defraud Plaintiffs, thereby interrupting service and causing loss or damage in excess of $5,000.  18 U.S.C. §§ 1030(a)(2) & (4).  An additional violation involved transmitting by international telephone communication a threat to cause and continue to cause damage to Plaintiffs' protected computer system with the intent to extort from Plaintiffs $300,000.  §§ 1030(a)(5) & (7).  The CFAA authorizes a civil action by one "who suffers damage or loss by reason of a violation of this section…against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  § 1030(g).

#### i.  "Protected Computer"

A "protected computer" is defined as a computer "which is used in or affecting interstate or foreign commerce or communication…." 18 U.S.C. §1030(e)(2)(B).  It is undisputed that Plaintiffs' laptop computer and computer system are connected to the internet and are used to communicate throughout the United States.  Therefore, Plaintiffs have shown that its laptop computer and computer system are in fact "protected computers" under the CFAA.

#### ii.  "$5,000 Jurisdictional Limit"

A civil case brought under the CFAA must involve a loss aggregating at least $5,000 in value.  See §1030(g) (referring back to §1030(c)(4)(A)(1)).  "Loss is defined in

5

the CFAA as 'any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.'" See *Continental Group, Inc. v. K.W. Property Management, LLC*, 622 F. Supp. 2d 1357, 1370 (S.D. Fla. 2009), *order clarified on other grounds,* 2009 WL 364475 (S.D. Fla. Oct. 30, 2009).  Plaintiffs have sustained loss as a result of interruption of service, since they were locked out of their computer system by Defendant.  *Id.* at 1371 (stating any "loss' must be as a result of interruption of service).

Moreover, the term "damage" under the CFAA is defined as "any impairment to the integrity or availability of data, a program, a system or information." 18 U.S.C. §1030(e)(8).  Plaintiffs sustained "damage" as so defined, since the data in their software was impaired and not just copied.  Defendant changed source code and passwords, making it impossible for Plaintiffs to access or run the Software.

Because Plaintiffs have sustained loss and damage as a result of Defendant's acts, and it is undisputed that Plaintiffs' cost of responding to the offense, conducting damage assessment and restoring the data, program system or information exceeds $5,000, the jurisdictional requirement of the CFAA has been met. This Court has federal question jurisdiction.

### iii.  Unauthorized Access or Exceeded Access

It is undisputed that Defendant exceeded his authority by not only accessing files to which he already had access for his job, but by changing source code and

6

passwords to lock Plaintiffs out from accessing their own computer system. Plaintiffs have clearly shown that Defendant did more than access files needed to do his job. ("[An employer] "clearly has a right to control and define authorization to access its own computer systems."). *Continental Group*, 622 F. Supp. 2d at 1372.

### iv. Trade Secrets

The Florida Uniform Trade Secrets Act, Fla. Stat. §688.001, *et. seq.,* broadly defines "trade secrets." Computer programs are trade secrets. See *Stoneworks, Inc. v. Empire Marble and Granite, Inc.,* 1998 WL 998962 *4 (S.D.Fla. Nov. 20, 1998) (*citing Vermont Microsystems, Inc. v. Autodesk, Inc.,* 39 USPQ 2d 1421 (2d Cir.1996)). "Moreover, as to any trade secrets that may not yet have been disclosed, Fla. Stat. §688.03 specifically provides for injunctive relief against actual and threatened misappropriation. *Id*. (*citing Thomas v. Alloy Fasteners*, 664 So.2d 59 (Fla. 5th DCA 1995)). It is undisputed that Plaintiffs' business management software, system and technological information accessed by Defendant comprise a valuable, highly confidential trade secret that is not readily ascertainable by the public, and that Plaintiffs have taken reasonable steps to safeguard this information from discovery by using secured passwords. Plaintiffs have therefore tendered adequate proof necessary to succeed on the merits of their trade secrets claim.

### C.  Remaining Permanent Injunction Elements

### 1.  Irreparable Harm

A threat of irreparable harm is an essential element of injunctive relief. See

7

*Northeastern Florida Chapter v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).  Defendant has stipulated that this element has been met.  Stipulation, ¶ 1.  In addition, a presumption of irreparable harm exists in cases involving alleged misappropriation of trade secrets.  See *Talk Fusion, Inc. v. J.J. Ulrich*, 2011 WL 2681677, *5 (M.D. Fla. June 21, 2011) (citing *Stoneworks Inc. v. Marble and Granite Inc.*, 1998 WL 998962, *6 (S.D. Fla. Nov. 20, 1998)).

### 2.  Balance of the Harm to the Parties

Defendant has not shown any redressable harm to him and the parties have agreed to entry of a permanent injunction against Defendant.  In addition, any monetary claim of Defendant did not justify exceeding authorized access to Plaintiffs' computer system, interrupting service and impairing Plaintiffs' business management software. Any claim of Defendant would be purely monetary in nature and under the Shareholders' and Pool Agreement, must be litigated in Switzerland.  See Exhibit B to Motion for Temporary Restraining Order, pp. 13-23 of [DE 4].

### 3.  Public Interest

As to the public interest, this Court finds that such interest is not disserved by issuance of an agreed upon permanent injunction. A permanent injunction would effectively serve the public interest by protecting businesses from violations of the CFAA, and from misappropriation of trade secrets.

## III. CONCLUSION

Based upon the foregoing factual findings and legal analysis, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs WIT Wälchli Innovation Technologies, Gmbh and WIT AMERICAS, LLC's Motion for Preliminary Injunction [DE 4] is hereby **DENIED as moot**;

2. Plaintiffs' request for entry of a Permanent Injunction against Defendant is hereby **GRANTED**.

3. Defendant, his agents, and all persons or entities acting in concert with him are hereby **PERMANENTLY ENJOINED** from in any way possessing, disclosing, publishing, transferring, copying, uploading, or in any way revealing or communicating any part of the Plaintiffs' business management software, including without limitation its source code, proprietary technology and know-how, without the express written consent of the Plaintiffs.

4. Defendant, his agents, and all persons or entities acting in concert with him is hereby **PERMANENTLY MANDATORILY ENJOINED** to do the following acts:

    a. To disclose to Plaintiffs the nature and location of each and every electronic original or copy of the Plaintiffs' Software, including any part of the Source Code that Defendant has made through the date of this Permanent Injunction.

b.     To destroy irretrievably any original or copies of all, or any part, of the Software, including the Source Code, that the Defendant has made or retained; and to permit Plaintiffs' experts to ascertain that the foregoing has been done.

c.     To immediately turn over to Plaintiffs any passwords, access codes or encryption codes he has placed on Plaintiffs' systems.

d.     To identify any files on Plaintiffs' systems that have been encrypted, moved, renamed, erased, or altered in any manner by Defendant, and to cooperate fully with Plaintiffs and their experts in undoing any such encryptions, file moves, renames, erasures, or alterations;

e.     To identify and fully cooperate in the removal of any malicious executable code that he may have placed on Plaintiffs' systems, including virii [sic], malware, Trojan horses, "Back Doors," "Easter Eggs," "cookies," password capture utilities, utilities to alert Defendant that system passwords have been changed and disclosing the new passwords to Defendant, and the like; and to provide under oath either an affirmation that no such executable malicious code was ever placed or implanted in Plaintiffs' systems or, if implanted, has been fully identified for removal.

5. Defendant is hereby **PERMANENTLY ENJOINED** from in any way accessing Plaintiffs' computer systems; including without limitation its servers, wherever located or hosted globally.

6. The Settlement Stipulation between the parties [DE 19] is hereby approved and incorporated into this Order as though fully set forth herein, and both Plaintiffs and Defendant are **ORDERED** to comply with the terms of the Stipulation.

7. This Court retains jurisdiction to enforce the Permanent Injunction entered herein and to grant to Plaintiffs all relief that is just and proper in the event that the permanent injunction is violated.

8. This Court likewise retains jurisdiction to enforce the terms of the Settlement Stipulation, and to grant all relief that is just and proper in the event that the permanent injunction is violated.

9. This action is hereby **DISMISSED without prejudice**, and the Clerk shall close this case.

10. The Clerk of the Court is hereby directed to refund the Plaintiffs' injunction bond to the Plaintiffs in full, including any interest. Counsel for Plaintiffs shall submit any necessary forms to the Financial Section of the Clerk's Office in Miami.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 24th day of January, 2012.

*James J. Cohn*
JAMES I. COHN
United States District Judge

copies to: Carlos De Zayas, Esq.
(Plaintiff's counsel to forward a copy to Defendant)